IN THE UNITED STATES DISTRICT COURT
Southern District of Indiana
Indianapolis Division

| | |
|---|---|
| JUSTIN EDWARD SMITH | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:13-cv-1814-WTL-DKL |
| | ) |
| MICHAEL D. BOWLBY, SHANA CARRELL, | ) |
| RANDY CORNELIAS, DAVID GRAHAM, | ) |
| DET. DANIEL CRAFTON, KENT MEEKER, | ) |
| NOAH WULLENWEBER, | ) |
| MICHAEL VOLLMAR, | ) |
| INMATE BRADLEY M. PARSONS, | ) |
| INMATE JASON RYAN BROWN AND | ) |
| INMATE LANCE M R HAZELWOOD, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS, MICHAEL D. BOWLBY, SHANA CARRELL, RANDY CORNELIAS, DAVID GRAHAM, DET. DANIEL CRAFTON, KENT MEEKER, NOAH WULLENWEBER AND MICHAEL VOLLMAR'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Come now the Defendants, Michael D. Bowlby, Shana Carrell, Randy Cornelias, David Graham, Det. Daniel Crafton, Kent Meeker, Noah Wullenweber and Michael Vollmar, (Shelby County Defendants) by counsel, and file their Memorandum in Support of Motion for Summary Judgment.

### I.   Introduction

This lawsuit arises out of Plaintiff, Justin Edward Smith's, allegations that he was battered/assaulted by inmate Jason Brown in one occurrence on August 20, 2013. Plaintiff also alleges that inmate Brad Parsons and inmate Lance Hazelwood also hit him with towels, dice and made verbal threats on other occasions. Plaintiff's Complaint alleges that he complained to officials at the Shelby County

Criminal Justice Center who failed to take action into these alleged events. Plaintiff alleges that officials failed to take note of injuries such as bruises and act upon said injuries. Plaintiff alleges that officials at the Shelby County Criminal Justice Center violated his constitutional rights. Plaintiff directs said allegations towards Defendants, Shana Carrell, Randy Cornelias, David Graham, Det. Daniel Crafton, Kent Meeker, Noah Wullenweber and Michael Vollmar. Plaintiff further alleges that Sheriff Bowlby failed to provide adequate security and adequate training to staff at the Shelby County Criminal Justice Center. (Plaintiff's Complaint).

## II. Facts

Plaintiff filed a 19 page Civil Action Complaint whereupon he has alleged deprivation of his constitutional rights arising from alleged incidents between himself and other inmates. (Plaintiff's Complaint). Inmate Smith was housed in K Block but was moved to L-Block (Segregation) July 14, 2012. Regarding the allegation of battery and assault by inmate Jason Brown that is alleged to have occurred on August 20, 2013. (Affidavit of Jerad Sipes). Once the alleged incident was brought to attention of the Shelby County Criminal Justice Center the alleged incident was investigated. (Affidavit of Shana Carrell; Affidavit of Kent Meeker; Affidavit of David Graham; Affidavit of Jerad Sipes; and Affidavit of Det. Daniel Crafton). From the first notice of this alleged incident there was no noticeable bruising or outward signs of injury relating to Mr. Smith. (Affidavit of Kent Meeker; Affidavit of David Graham; Affidavit of Shana Carrell; Affidavit of Jerad Sipes; and Affidavit of Det. Daniel Crafton).

On August 21, 2013 at Mr. Smith was interviewed by Sergeant Shana Carrell. (Affidavit of Shana Carrell). Mr. Smith informed in part that inmate Brown attacked

him leaving bruises and choked him. (Affidavit of Shana Carrell). Mr. Smith stated that the alleged incident occurred on August 20, 2013 at 11:30. (Affidavit of Shana Carrell). Part of the investigation included observing Mr. Smith for injury. There were no bruises or other signs of injury were observed on Mr. Smith during the investigation. (Affidavit of Shana Carrell). Sergeant Shana Carrell reviewed the video surveillance for L Block, the area of the alleged assault where she found no evidence of an assault. (Affidavit of Shana Carrell). Sargent Carrell completed an incident report, requested additional watch regarding Mr. Smith, and she discussed the alleged incident with other personnel. (Affidavit of Shana Carrell). No injuries could be identified to Mr. Smith nor was there any evidence that an altercation had taken place between Mr. Smith and Mr. Brown. (Affidavit Shanna Carrell and Shelby County Criminal Justice Center Incident Report #1579).

On August 27, 2013 Detective Daniel Crafton of the Shelby County Sheriff's Department interviewed Mr. Smith in the jail interview room on August 27, 2013. (Affidavit of Det. Daniel Crafton). In the interview Mr. Smith informed Detective Crafton that he was housed in Segregation due to him being charged with Child Molesting. (Affidavit of Det. Daniel Crafton). Mr. Smith advised that inmate Jason Brown was also housed in the same Segregation area. (Affidavit of Det. Daniel Crafton). Mr. Smith informed Detective Crafton that inmate Brown assaulted him during dinner time in a common area on August 20, 2013. (Affidavit of Det. Daniel Crafton). Mr. Smith advised that inmate Brown came up behind him, simulated having sex and then put his hands around Mr. Smith's neck and started to pick him up off the ground by the neck. (Affidavit of Det. Daniel Crafton). During the interview process Detective Crafton observed no bruises or outward signs of injuries

3

on Mr. Smith. (Affidavit of Det. Daniel Crafton). Detective Crafton interviewed Alva Catt who Mr. Smith identified as a witness to the event. (Affidavit of Det. Daniel Crafton). Mr. Catt failed to substantiate the battery allegation described by Mr. Smith of being grabbed around his neck and picked up off the ground. (Affidavit of Det. Daniel Crafton). Detective Crafton also reviewed the video surveillance of the area of the alleged assault during the date and the time provided by Mr. Smith. (Affidavit of Det. Daniel Crafton). The video did not substantiate Mr. Smith's allegations. (Affidavit of Det. Daniel Crafton). After review of the video Detective Crafton saw no evidence of the battery between Mr. Smith and inmate Jason Brown. (Affidavit of Det. Daniel Crafton). As part of Detective Crafton's investigation he also interviewed inmate Jason Brown. (Affidavit of Det. Daniel Crafton). Brown stated that he was familiar with Mr. Smith, that they were in L block together however he denied ever battering Mr. Smith. (Affidavit of Det. Daniel Crafton). Inmate Brown further advised that he never put his hands around Mr. Smith's neck. (Affidavit of Det. Daniel Crafton). In the end of Detective Crafton's investigation he found no evidence of an assault or battery where inmate Brown put his hands around Mr. Smith's neck and ultimately Detective Crafton closed the case due to lack of evidence. (Affidavit of Det. Daniel Crafton; Shelby County Sheriff's Department Investigation Report #SHF-13-01617; Video Surveillance from L-Block).

In his Complaint Plaintiff alleges that inmate Brad Parsons and inmate Lance Hazelwood hit him with towels, hit him with dice and made verbal threats. (Plaintiff's Complaint paragraphs 24 and 25 and Grievance Report). Mr. Smith filed a grievance on September 16, 2013. (Affidavit of Jerad Sipes & Grievance Report). In addition to his allegations Mr. Smith claims that he requested to "Varmer and Wamerwaber" be

4

removed from the block. (Grievance Report). In his Complaint Mr. Smith identifies the officers as Vollmer and Wullenweber. (Plaintiff's Complaint). This alleged claim was assessed by staff at the Shelby County Justice Center. (Affidavit of Jerad Sipes; Affidavit of Michael Vollmar; Affidavit of Randy Cornelius; Affidavit of Noah Wullenweber; Affidavit of Randy Cornelius).

Lieutenant Jerad Sipes investigated Mr. Smith's September 16, 2013 grievance. (Affidavit of Jerad Sipes). During his investigation Lieutenant Sipes noted that Deputy Michael Vollmar was transferred to courtroom security in May 2013. (Affidavit of Jerad Sipes). Lieutenant Sipes determined that inmate Lance Hazelwood was released from the Shelby County Justice Center on May 17, 2013. (Affidavit of Jerad Sipes see attached Release Report). Third, after review of the Shelby County Justice Center inmate records Mr. Smith and inmate Brad Parson did not share a housing unit for over a period of one (1) year from the date of this September 16, 2013 grievance. (Affidavit of Jerad Sipes). Inmate Parsons was housed in K Block and was never housed in L-Block. (Affidavit of Jerad Sipes). Lieutenant Sipes made these points in response to Mr. Smith's grievance, returned his responses to the grievance to Mr. Smith and Lieutenant Sipes never heard anything further from Mr. Smith about the grievance. (Affidavit of Jerad Sipes and Grievance Report). During the course of investigating this allegation there were no observed visible injuries on Mr. Smith, no bruises on his person, nor anything to support his allegations or to support any injury had in fact occurred. (Affidavit of Jerad Sipes; Affidavit of Michael Vollmar; Affidavit of Randy Cornelius; Affidavit of Noah Wullenweber; Affidavit of Randy Cornelius).

During Mr. Smith's incarceration Lieutenant Sipes as part of his duties interviewed Mr. Smith in weekly segregation checks beginning in September 2013. (Affidavit of Jerad Sipes). During the weekly segregation interviews with Lieutenant Sipes, Mr. Smith did not make any references to the events that were alleged in his September 16, 2013 grievance. (Affidavit of Jerad Sipes).

The Shelby County Sheriff's Department has no record that a Notice of Tort Claim was filed by Mr. Smith concerning the allegations set forth in his Complaint. (Affidavit Michael Bowlby)

In regards to how Mr. Smith was housed during his incarcerations in the Shelby County Criminal Justice Center, the Jail always complied with federal and state laws for his housing. (Affidavit Michael Bowlby; Affidavit of Shana Carrell; Affidavit of Kent Meeker; Affidavit of David Graham; Affidavit of Michael Vollmar; Affidavit of Randy Cornelius; Affidavit of Noah Wullenweber; Affidavit of Randy Cornelius; and Affidavit of Jerad Sipes).

Members of the Sheriff's Department Jail Staff ensured that Mr. Smith had adequate food, clothing, shelter, protection and medical care. (Affidavit Michael Bowlby; Affidavit of Shana Carrell; Affidavit of Kent Meeker; Affidavit of David Graham; Affidavit of Michael Vollmar; Affidavit of Randy Cornelius; Affidavit of Noah Wullenweber; Affidavit of Randy Cornelius; and Affidavit of Jerad Sipes).

In terms of any claimed issues by Mr. Smith, the Shelby County Justice Center (jail) staff timely addresses issues, made any necessary documentations of any issues and took any necessary action to address his issues. (Affidavit Michael Bowlby; Affidavit of Shana Carrell; Affidavit of Kent Meeker; Affidavit of David Graham;

Affidavit of Michael Vollmar; Affidavit of Randy Cornelius; Affidavit of Noah Wullenweber; Affidavit of Randy Cornelius; and Affidavit of Jerad Sipes).

In terms of any claimed issues by Mr. Smith, the Shelby County Justice Center/Jail staff timely addressed issues, made any necessary documentation of any issues and took any necessary action to address his issues. Neither myself nor to my knowledge any other staff affiliated with the Shelby County Sheriff's Department ever acted with a deliberate indifference towards the safety of Mr. Smith. (Affidavit Michael Bowlby; Affidavit of Shana Carrell; Affidavit of Kent Meeker; Affidavit of David Graham; Affidavit of Michael Vollmar; Affidavit of Randy Cornelius; Affidavit of Noah Wullenweber; Affidavit of Randy Cornelius; Affidavit Det. Daniel Crafton; and Affidavit of Jerad Sipes).

### III. Summary Judgment Standard

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. FRCP 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. FRCP 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. FRCP 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that

7

the adverse party cannot produce admissible evidence to support the fact. FRCP 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. FRCP 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. FRCP 56(e).

The Court need only consider the cited materials, FRCP 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id.* at 901. The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

### IV. ARGUGMENTS

#### A. Violations of Constitutional Rights

The bar for a basic Eighth Amendment claim is requisitely high and requires Plaintiff to show: 1) he was incarcerated under conditions that posed a substantial risk of serious harm to his health or safety; 2) that the Defendants were deliberately indifferent to Plaintiff's health or safety; and 3) the Defendants' conduct caused harm

to Plaintiff. *Farmer v. Brennan*, 511 U.S. 825 (1994). Plaintiff cannot prove any of these elements, let alone all of them.

Further, even if Plaintiff could show that he suffered a constitutional deprivation, the Sheriff, Michael Bowlby, would still be entitled to summary judgment because Plaintiff cannot present evidence to establish that any alleged deprivation was a result of an existing policy, rather than an isolated incident. Plaintiff sued the Sheriff in his official capacity, which is effectively the same as having brought suit against the Shelby County itself. *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1071 (7th Cir. 2012); citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978).

Because Plaintiff cannot prove a constitutional violation and cannot establish a *Monell* claim, the Defendants are entitled to summary judgment in their favor as a matter of law as to all of Plaintiff's claims.

### B. Plaintiff Has No Viable State Law Claims. Plaintiff Failed to File a Notice of Tort Claim and Failed to Comply with the Indiana Tort Claims Act.

Indiana Code §34-13-3-8 provides that a tort claim against a political subdivision and/or its employees is barred unless notice is filed with the governing body of the political subdivision within 180 days after the loss occurs. This applies to claims against individual governmental employees as well. *Poole v. Clase*, 476 N.E. 2d 828, 831 (Ind. 1985); *Bienz v. Bloom*, 674 N.E.2d 998, 1004 (Ind. Ct. App. 1996). The filing of a notice of tort claim is a procedural prerequisite to filing suit against the governmental entity or its employees. *Rodgers v. Martinsville School Corp.*, 521 N.E.2d 1322, 1325 (Ind. Ct. App. 1988). The failure to give timely notice to a governmental entity is a jurisdictional bar to maintaining a tort action against that entity. *Id.*

9

Compliance with the Tort Claims Act is a question for law for the Court to decide. *Madden v. Erie Ins. Group*, 634 N.E.2d 791, 793 (Ind.Ct.App.1994)("The question of compliance is not a question of fact, but rather a procedural precedent which the plaintiff must prove and which the trial court must determine prior to trial.") Once raised, it is the Plaintiffs' burden to prove compliance with the Act. *Gregor v. Szarmach*, 706 N.E.2d 240, 241 (Ind. Ct. App. 1999.)

Plaintiff's Complaint arises out of events alleged to have occurred on or about August 20, 2013. Clearly the 180 day notice requirement has long since passed. Plaintiff sent no notice of tort claim to the Defendants, Shelby County. Plaintiff, Justin Edward Smith, failed to comply with the ITCA's notice requirements, and thus all State claims against the Defendants are barred. *Brown v. Alexander*, 876 N.E.2d 376, 382 (Ind. Ct. App. 2007) (upholding summary judgment in favor of political subdivision due to Plaintiff's failure to comply with notice requirements of ITCA); *Schoettmer v. Wright*, 971 N.E.2d 118 (Ind. Ct. App. 2013)(upholding summary judgment in favor of political subdivision due to Plaintiffs' failure to comply with notice requirements of ITCA, rejecting Plaintiffs' argument of "substantial compliance").

### C. **Qualified Immunity shields the Shelby County Defendants (Law Enforcement Officers) from all of the claims against them individually**

In his Complaint, Plaintiff makes claims against Defendants, Michael D. Bowlby, Shana Carrell, Randy Cornelias, David Graham, Det. Daniel Crafton, Kent Meeker, Noah Wullenweber and Michael Vollmar. The Shelby County Defendants are entitled to qualified immunity for all alleged actions and inaction alleged in Plaintiff's Complaint.

Qualified immunity is generally a question of law for the court to resolve, *Rakovich v. Wade*, 850 F.2d 1180, 1201-02 (7th Cir.1988), "at the earliest possible stage in litigation," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). As such, summary judgment provides a proper posture from which to decide this objective legal question. *Rakovich*, 850 F.2d at 1204-05. Government officials may raise qualified immunity as an affirmative defense to actions brought against them under 42 U.S.C. § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. *Harlow* thus announced an objective standard for determining whether a government officer is entitled to qualified immunity. *Id.* at 816-19. In that regard, a "law enforcement officer who participates in a search that violates the Fourth Amendment may [not] be held personally liable for money damages if a reasonable officer could have believed that the search comported with the Fourth Amendment." *Anderson v. Creighton*, 483 U.S. 635 (1987).

In this circuit, we have outlined a two-step approach for analyzing a defendant's qualified immunity defense: "(1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question?" *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir.1994) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991)); see also *Siegert*, 500 U.S. at 232 ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is `clearly established' at the time the

defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."). A negative answer to either prong of this test will decide the matter. *Montville v. Lewis*, 87 F.3d 900, 902 (7th Cir.1996).

Once a defendant has raised a qualified immunity defense, the plaintiff bears the burden of demonstrating the violation of a clearly established right. *Kernats*, 35 F.3d at 1176 (citing *Rakovich*, 850 F.2d at 1209). To demonstrate that a right is "clearly established," plaintiffs need not show that "the very action in question" was previously held unlawful, *Anderson*, 483 U.S. at 640, or that a prior case is "on all fours" with the facts and the law in their own case, *Landstrom v. Illinois Dep't of Children & Family Servs.*, 892 F.2d 670, 676 (7th Cir.1990). Instead, "[c]losely analogous cases, those decided before the defendants acted or failed to act, are required to find that a constitutional right is clearly established." *Rakovich*, 850 F.2d at 1209. To demonstrate that a right is "clearly established," plaintiffs need not show that "the very action in question" was previously held unlawful, *Anderson*, 483 U.S. at 640, or that a prior case is "on all fours" with the facts and the law in their own case, *Landstrom v. Illinois Dep't of Children & Family Servs.*, 892 F.2d 670, 676 (7th Cir.1990). Instead, "[c]losely analogous cases, those decided before the defendants acted or failed to act, are required to find that a constitutional right is clearly established." *Rakovich*, 850 F.2d at 1209.

A key determination in this analysis is the level of generality for courts to apply in identifying which legal rights are clearly established. See *Kerr v. Farrey*, 95 F.3d 472, 480 (7th Cir.1996). "[T]he Supreme Court cautioned against imposing an unrealistic burden on public officials" in conducting this analysis. *Id.* (citing *Anderson*, 483 U.S. at 639). Requiring too much hesitation from our public officials

would impair the purpose of qualified immunity, which is to give "`ample room for mistaken judgments 'by protecting' all but the plainly incompetent or those who knowingly violate the law.'" *Hunter*, 502 U.S. at 229. An "accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." *Id.* As such, a "clearly established" right must be sufficiently clear so that a reasonable officer would understand that he is violating that right. *Anderson*, 483 U.S. at 640.

In the case at bar, even if Plaintiff was subjected to an instance of rough handling by another inmate this falls short of a claim of a constitutional violation. In fact, there is no credible evidence that that allegations claimed by the Plaintiff can be substantiated. Plaintiff's allegations in each instance were thoroughly investigated. In both instances Plaintiff was found to have no visible injuries despite his claims otherwise. The first allegation involving inmate Brown cannot be substantiated after review of the surveillance video, witness accounts, and through the official investigation. The second instance involving a grievance filed September 16, 2013 is equally without any support. Inmate Parsons had not shared a housing unit with Mr. Smith for at least one year prior to the alleged grievance being filed. Inmate Hazelwood was released on May 17, 2013 and Deputy Vollmer had been transferred out of the jail to work security in the courthouse. The factual logistics of the individuals listed in Mr. Smith's grievance illustrate the complete lack of credibility of his claims. There is no support for the allegations nor the claimed violations.

Plaintiff's allegations of constitutional violations are simply completely unsupported. Given this analysis from the legal authority, qualified immunity

13

shields the Shelby County Defendants, Defendants, Michael D. Bowlby, Shana Carrell, Randy Cornelias, David Graham, Det. Daniel Crafton, Kent Meeker, Noah Wullenweber and Michael Vollmar from all of Plaintiff's claims.

The claims made by Plaintiff did not amount to any evidence of a constitutional violation and thus, the Defendants are entitled to qualified immunity. Plaintiff cannot rely on his self-serving statements contained within his Complaint to prove his allegations.  Plaintiff must come forward with actual proof of his alleged constitutional violations and actual proof that the events alleged actually occurred.

### D. **Plaintiff lacks evidence to show a constitutional violation.**

In general, the Eighth Amendment's prohibition against cruel and unusual punishment imposes upon jail officials the duty to "provide humane conditions of confinement" for prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  This duty includes the obligation to "ensure that inmates receive adequate food, clothing, shelter, protection, and medical care."  "[W]hile 'the Eighth Amendment forbids cruel and unusual punishments; it does not require the most intelligent, progressive, humane, or efficacious prison administration.'" *Thomas v. Ramos*, 130 F.3d 754, 763 (7th Cir. 1997) (quoting *Anderson v. Romero*, 72 F.3d 518, 524 (7th Cir. 1995)); see *Farmer*, 511 U.S. at 832.  "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Johnson v. Phelan*, 69 F.3d 144, 147 (7th Cir. 1995) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986), cert. denied sub. nom., *Johnson v. Sheahan*, 117 S. Ct. 506 (1996)).

Deliberate indifference is the standard for alleged infringements under the 8th Amendment of the United States Constitution.

> We have held that failure to provide protection constitutes an Eighth Amendment violation ***only if deliberate indifference*** by prison officials to a prisoner's welfare "effectively condones the attack by allowing it to happen." *Lewis v. Richards,* 107 F.3d 549, 553 (7th Cir.1997) (citation and quotation marks omitted). To sustain his Eighth Amendment claim on Count One, Mr. Santiago had to allege facts sufficient to show "that the defendants had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Id.* (citation and quotation marks omitted). *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).

Members of the Shelby County Sheriff's Department and Jail Staff ensured that Mr. Smith had adequate food, clothing shelter, protection and medical care during his incarceration. In terms of any claimed issues by Mr. Smith, the jail's staff timely addressed issues brought to their attention, made any necessary actions to address his issues. The designated evidence shows that no official the Shelby County Criminal Justice Center or the Shelby County Sheriff's Department ever acted with a deliberate indifference towards the safety of Mr. Smith.

Given this established framework for prisoner claims, Plaintiff cannot prove an Eighth Amendment violation either as to allegations towards the Shelby County Jail, or any of the named Defendants.

### E. **Plaintiff cannot prove a *Monell* violation by Sheriff Bowlby**

Even if Plaintiff could show that he suffered a constitutional deprivation, the Sheriff Michael Bowlby would still be entitled to summary judgment because Plaintiff cannot present evidence to establish that any alleged deprivation was a result of an existing policy, rather than an isolated incident. Plaintiff sued the Sheriff which is

15

quite different than having brought suit against the Shelby County itself. *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1071 (7th Cir. 2012); citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978).

For a *Monell* claim Plaintiff must establish an "affirmative link" between the custom or policy in question and the constitutional violation. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 822 (1985). Plaintiff fails to show either a custom or policy by the Sheriff's department allowed for a constitutional violation or that there even was a constitutional violation by the Sheriff under the facts the Court has to consider.

The undisputed facts show:

- The Sheriff followed all state and federal guidelines for housing of inmates;
- The Shelby County Sheriff's Department Jail Staff ensured that Mr. Smith had adequate food, clothing, shelter, protection and medical care.
- When Plaintiff notified the Defendants of an issue, said issue was investigated by the Shelby County Jail staff when necessary, incidents were documented and any necessary action was taken.
- None of the Defendants acted with a deliberate indifference towards the safety of Mr. Smith.

Plaintiff has not provided sufficient evidence to support the inference that he suffered a constitutional deprivation as a result of unconstitutional policies or customs. Further, Plaintiff has not cogently alleged any specific policy caused a constitutional violation. The Sheriff's policies must be the moving force behind a constitutional violation before liability can be imposed under *Monell.* See *Thomas v. Cook Co. Sheriff's Dept.*, 588 F.3d 445, 457 (7th Cir. 2009)(finding claims against Sheriff too

remote to support liability under *Monell*). The bottom line is that Plaintiff has no *Monell* claim.

## CONCLUSION

Plaintiff cannot prove any condition during his incarceration at the Shelby County Justice Center (Shelby County Jail) violated his constitutional rights. Plaintiff cannot prove that Defendants, Michael D. Bowlby, Shana Carrell, Randy Cornelias, David Graham, Det. Daniel Crafton, Kent Meeker, Noah Wullenweber and Michael Vollmar violated his constitutional rights. Further, Plaintiff cannot show sufficient evidence to establish a *Monell* claim as to the Sheriff. Summary judgment is therefore appropriate for Defendants, Michael D. Bowlby, Shana Carrell, Randy Cornelias, David Graham, Det. Daniel Crafton, Kent Meeker, Noah Wullenweber and Michael Vollmar as to all of Plaintiff's claims.

          Respectfully submitted,

          **TRAVELERS STAFF COUNSEL OFFICE**

By: */s/ Matthew D. Miller*
     Matthew D. Miller; #21744-49

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 10th day of March, 2015, a copy of this document was filed electronically, with a copy automatically served via the Court's CM/ECF system upon all counsel of record.

I further certify that a copy of the foregoing document has been duly served upon all persons listed below, by United States mail, first-class postage prepaid, on this 10th day of March, 2015:

Justin Edward Smith
New Castle Correctional Facility
1000 Van Nuys Road
PO Box A
New Castle, IN  47362

Inmate Bradley M. Parsons
202 W. South Street
Shelbyville, IN  46176

Inmate Lance MR Hazelwood
Inmate #239194
New Castle IDOC
Shelbyville, IN  46176

Inmate Jason Ryan Brown
7824 N. 700 W.
Fairland, IN  46126

By: */s/ Matthew D. Miller*
Matthew D. Miller; #21744-49

Travelers Staff Counsel
280 E. 96th Street, Suite 325
Indianapolis, IN  46240
Telephone:  (317) 818-5100
Fax:  (317) 818-5124
mmille22@travelers.com
MDM/km